IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MID-STATE AUTOMOTIVE, INC., et al.,

        Plaintiffs,

v.                                    CIVIL ACTION NO. 2:19-cv-00407

HARCO NATIONAL INSURANCE CO.,

        Defendant.

**ORDER**

Plaintiffs Mid-State Automotive, Inc., Rodney LeRose II, Jonathan LeRose, Mid-State Properties, LLC, and Mid-State Ford, LLC (collectively, "Plaintiffs") bring this action against their insurance company, Defendant Harco National Insurance Co. ("Defendant"), and allege breach-of-contract and bad-faith claims stemming from a fire loss at their car dealership that occurred on June 9, 2017. (ECF No. 1.) Before this Court is Defendant's motion for protective order to limit the scope of its Federal Rule of Civil Procedure 30(b)(6) deposition. (ECF No. 50.) For the reasons explained more fully herein, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

    *A. Topics 1–4 and Requests 1, 2, & 4*

These deposition topics and the corresponding document requests deal with IAT Insurance Group's ("IAT") use of the services of three companies—Unified Investigations and Sciences, Inc., VeriClaim, Inc., and Sedgwick—to investigate fire loss claims on behalf of IAT's companies over the past ten years. (ECF No. 51-1 at 3–4, 6.) Defendant argues that the topics and requests are overbroad because they seek information about non-party insurance companies, they seek information from as far back as 2009 when the fire loss

at issue occurred in 2017, and they are not limited geographically to West Virginia. (ECF No. 51 at 6–9.) Plaintiffs respond that the requested information is relevant to their bad-faith claims and argue that the information is known to Defendant and is accessible through computerized search tools. (ECF No. 53 at 3–7.)

The topics and requests sweep far too broadly. First and foremost, Plaintiffs have not named IAT—or any of its affiliated companies aside from Defendant—as parties to this action, nor have they alleged that Defendant's actions were in any way directed by IAT. (*See* ECF No. 1.) Moreover, Plaintiffs have not explained how the conduct of IAT or any of its affiliated companies aside from Defendant bears on *Defendant's* alleged failure to properly pay Plaintiffs' claims under the insurance policy issued by *Defendant*. (*See id.*; ECF No. 53 at 3–7.) Plaintiffs are entitled to the requested information insofar as it relates to Defendant, but discovery about the other entities appears is not relevant to Plaintiffs' claims.

The topics and requests at issue should be further narrowed to claims for fire loss under a Commercial – Special Form insurance policy, which is the type of policy under which Plaintiffs' claims arise. (*See* ECF No. 1 at 3.) At this time, the undersigned also finds it appropriate to limit the topics and requests geographically to West Virginia, where Plaintiffs' fire loss occurred. (*See id.*)

Finally, the ten-year time period in the topics and requests is significantly longer than necessary for a fire loss that occurred on June 9, 2017. The undersigned finds it appropriate for Defendant to provide the requested information dating back to June 9, 2015.

In sum, with respect to Topics 1–4 and Requests 1, 2, and 4, Defendant's motion for protective order is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

2

B. *Topic 10*

This topic proposes questioning about "[t]he number of loss of business income and increased expenses claims made by [Defendant's] insureds in the State of West Virginia over the past five (5) years and whether any of those claims were paid in whole or in part." (ECF No. 51-1 at 5.) Defendant argues that the topic seeks irrelevant information and would require Defendant to reveal its policyholders' information. (ECF No. 51 at 9.) Plaintiffs respond that they do not seek details about other policyholders or their claims, but rather information about the number of claims and whether the claims were paid. (ECF No. 53 at 7–8.) Plaintiffs assert that this information is relevant to their bad-faith claims. (*Id.* at 8.)

Plaintiffs are entitled to the requested information because it would allow them to determine whether Defendant paid the exact types of claims that Plaintiffs allege were denied in this case. (*See* ECF No. 1 at 4, 13.) Further, the topic, as written, plainly does not ask for details about Defendant's policyholders, and there appears little chance that the policyholders' identifying information could be revealed unless Defendant chose to reveal it. Defendant's motion for protective order is **DENIED** as to Topic 10.

C. *Topic 12 and Requests 6, 9, & 10*

This topic and the related requests seek information about the policies and procedures Defendant uses to investigate fire loss claims under a Commercial – Special Form insurance policy. (ECF No. 51-1 at 5, 7.) As to Topic 12, which requests information about Defendant's policies and procedures "in the past five (5) years" (*id.* at 5), Defendant argues that the five-year period is overbroad. (ECF No. 51 at 10.) Indeed, only those policies and procedures applicable to Defendant's investigation of Plaintiffs' fire loss claim—*i.e.*, the policies and procedures in place at the time of the fire loss on June

9, 2017—are relevant to Plaintiffs' claims here. Previously existing policies that were not in place at that time have no bearing on whether Defendant acted in bad faith when handling Plaintiffs' claims. However, any material, substantive changes to Defendant's policies and procedures that have occurred since June 9, 2017, are an appropriate subject of discovery. In other words, Plaintiffs are entitled to the requested information dating back to June 9, 2017.

With respect to Request 6, which requests "[c]opies of any and all written directives, memos, procedures, etc. which were followed by any of the individuals involved in the handling of Plaintiffs' claim" (ECF No. 51-1 at 7), Defendant argues that it "cannot reasonably ascertain what 'etc.' refers to." (ECF No. 51 at 10.) Defendant's contention is without merit. The request is not at all vague when viewed in context. Plaintiffs clearly seek written manifestations of the policies and procedures Defendant followed in handling Plaintiffs' insurance claims. Defendant's argument causes the undersigned to question whether the parties complied with the meet-and-confer obligation laid out in Local Rule of Civil Procedure 37.1(b) prior to Defendant filing its motion; it seems as though Defendant simply could have asked Plaintiffs "what 'etc.' refers to" without needing this Court's guidance.

Relatedly, as to Requests 9 and 10, which request copies of Defendant's Commercial – Special Form claims investigation policies and procedures dating back to January 1, 2014 (ECF No. 51-1 at 7), Defendant argues that the requests should be limited to fire loss claims in West Virginia. (ECF No. 51 at 10.) This limitation is reasonable, as other policies and procedures have little to no relevance to Plaintiffs' claims. But Defendant also argues that it would have "to review every claim file and every internal memorandum or correspondence generated within the last five years." (*Id.*) Although

4

Request 9 is broad enough to potentially encompass a review of emails between co-workers, when viewed in context, it is clear that Plaintiffs seek the policies and procedures Defendant sanctioned and used to investigate claims, regardless of whether those policies and procedures were recorded in a claims manual or in an interoffice memo. Put simply, Plaintiffs want to know how Defendant investigates claims, and they are entitled to that information insofar as it relates to the investigation of fire loss claims in West Virginia.

In sum, with respect to Topic 12 and Requests 6, 9, and 10, Defendant's motion for protective order is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

*D. Topic 14*

This topic requests certain information about Defendant's financial condition over the past ten years. (ECF No. 51-1 at 5.) Defendant argues that the requested information is irrelevant and that "Plaintiffs have made no effort to tailor the request to this case." (ECF No. 51 at 11.) Plaintiffs respond that information about Defendant's financial condition is relevant to their request for punitive damages. (ECF No. 53 at 9.) Indeed, "[i]n a West Virginia punitive damage action, the plaintiff is entitled to admit evidence of the defendant's financial condition." *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 919 (W. Va. 2010) (Ketchum, J., concurring in part and dissenting in part). Therefore, the requested information about Defendant's financial condition is relevant and discoverable. However, the pertinent consideration in awarding punitive damages is the defendant's financial condition at the time of the trial—or at most, at the time of the alleged injury. *See Kessell v. Leavitt*, 511 S.E.2d 720, 818–19 (W. Va. 1998). It is thus appropriate to limit this topic to Defendant's financial condition dating back to June 9, 2017. Defendant's motion for protective order is **GRANTED IN PART** and **DENIED IN PART** as to Topic 14.

*E. Request 11*

This request seeks information relating to Defendant's employee performance incentives dating back to 2014. (ECF No. 51-1 at 8.) Defendant argues that the request improperly seeks information from non-party insurance companies and would "require [Defendant's] corporate designee to familiarize himself or herself with every personnel file for every employee for the entire company." (ECF No. 51 at 11.) Plaintiffs respond that "documents reflecting [Defendant's] incentive structure" are "relevant to determining whether [Defendant] has implemented improper standards for claims handling." (ECF No. 53 at 9–10.)

To the extent this request seeks information about the performance incentives for employees who work for companies other than Defendant, that information is plainly not relevant to Plaintiffs' claims. Further, Plaintiffs have not provided any factual basis to suggest that Defendant's employee bonus structure contributed to the manner in which Defendant handled Plaintiffs' fire loss claims or is otherwise relevant. Therefore, Plaintiffs are not entitled to the requested information. Defendant's motion for protective order is **GRANTED** as to Request 11.

*F. Location of Deposition*

Defendant requests that its Rule 30(b)(6) deposition be conducted in Georgia, which it asserts is the "home base" of its Rule 30(b)(6) designee. (ECF No. 53 at 12–13.) Plaintiffs respond that the deposition should take place in West Virginia because it "is the location where the underlying policy was sold, where [Defendant] regularly conducts business, and where many of the attorneys and witnesses reside." (ECF No. 53 at 11.) However, the only pertinent witness is the deponent, who resides in Georgia.

6

The "governing presumption" is that a non-resident corporation's Rule 30(b)(6) designee "should be deposed at the corporation's principal place of business." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 472 (E.D. Va. 2010). This presumption "is overcome where the record presents unique or distinctive circumstances demonstrating either (i) that taking the depositions at the corporation's principal place of business would be unduly burdensome, or (ii) that, by virtue of the corporation's regular course of activity in the alternative location, the burden of requiring the officer or managing agent to be deposed there is minimal and the savings to the deposing party are substantial." *Id.* Here, Defendant's principal place of business appears to be Illinois, which neither Plaintiffs nor Defendant suggests as a location for the Rule 30(b)(6) deposition. Accordingly, the presumption that the deposition will take place there is likely overcome.

Of the choice between Georgia and West Virginia, Georgia is the more appropriate location because the Rule 30(b)(6) designee resides there. The presumption that a corporate deposition will take place at the corporation's principal place of business is a corollary of the more general rule that "the defendant will be examined at his residence or place of business or employment." *Belk, Inc. v. Meyer Corp.*, No. 3:07-cv-168-DCK, 2009 WL 703704, at *5 (W.D.N.C. Mar. 16, 2009). And the proposed Rule 30(b)(6) designee does not appear to have significant connections to West Virginia, such that travel here for business purposes is frequent enough to render West Virginia a compelling location for the deposition. *See Outsidewall Tire Litig.*, 267 F.R.D. at 473 ("[T]he correct inquiry is whether the deponent frequently travels to the forum district or the proposed deposition situs."). Further, only Plaintiffs' counsel are located in West Virginia, and the proposed location is convenient only for them, which is the opposite of the general rule that "a party seeking discovery must go where the desired witnesses are normally located."

7

*Belk, Inc.*, 2009 WL 703704, at *5 (quoting *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987)); *see id.* ("[P]laintiffs normally cannot complain if they are required to take discovery at great distances from the forum." (quoting *Farquhar*, 116 F.R.D. at 72)).

As such, Defendant's motion for protective order is **GRANTED** with respect to the location of the Rule 30(b)(6) deposition.

### G. Alternative Requests for Relief

Because the undersigned denies Defendant's motion in part as set forth herein, it is appropriate to address Defendant's alternative requests for relief. First, Defendant requests that Plaintiffs be required to bear the costs associated with Defendant's preparation of its Rule 30(b)(6) designee because Plaintiffs "made no attempt to tailor or narrow the grossly overbroad requests for testimony and documents." (ECF No. 51 at 13–14.) This Order significantly limits the scope of those requests, such that the required preparation is not unduly burdensome to Defendant. Accordingly, Defendant's request for cost-shifting is **DENIED**.

Defendant also requests that the undersigned "stay the deposition . . . on any topic that is not related to the parties' contractual dispute until the Court issues a ruling on [Defendant's] Motion to Compel Appraisal." (ECF No. 51 at 13.) Defendant argues that the discovery related to Plaintiffs' bad-faith claims—*i.e.*, the discovery that is the subject of Defendant's motion for protective order—"threatens to subsume the core issue in this case." (*Id.* at 14.) But the bad-faith claims remain at issue in this case, and the motion to compel appraisal remains pending before this Court. Therefore, Plaintiffs are entitled to seek discovery related to those claims at this time. Defendant's request to stay the deposition is **DENIED**.

In conclusion, for the foregoing reasons, Defendant's motion for protective order (ECF No. 50) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: January 2, 2020

Dwane L. Tinsley
United States Magistrate Judge