IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MID-STATE AUTOMOTIVE, INC., et al.,

        Plaintiffs,

v.                                  CIVIL ACTION NO. 2:19-cv-00407

HARCO NATIONAL INSURANCE CO.,

        Defendant.

## ORDER

Plaintiffs Mid-State Automotive, Inc. and Mid-State Ford, LLC (collectively, "Plaintiffs") bring this action against their insurance company, Harco National Insurance Co. ("Defendant"), alleging claims for breach of contract and bad faith in the insurance context arising out of Defendant's failure to compensate them after a fire loss at their car dealership. (ECF No. 1.) Plaintiffs served their first set of discovery requests on Defendant on September 11, 2019. (ECF No. 20.) Before this Court is Plaintiffs' supplemental motion to compel Defendant to respond to some of those requests. (ECF No. 73.)[1] For the reasons explained more fully herein, the motion (ECF No. 73) is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Plaintiffs initially filed their motion to compel Defendant to respond to the requests on November 8, 2019. (ECF No. 37.) On January 24, 2020, the undersigned held a hearing on that motion and offered the parties an opportunity to file supplemental briefing reflecting the current status of the motion. (ECF No. 62.) Plaintiffs then filed their supplemental motion to compel. (ECF No. 73.) As such, the initial motion to compel (ECF No. 37) is **DENIED AS MOOT**.

### A. Interrogatories Nos. 2–4

These interrogatories request that Defendant identify the individuals who were involved in handling Plaintiffs' fire loss claim and provide certain information about each of them, including a detailed description of their involvement and information about their training. (ECF No. 73 at 13.) Defendant provided the requested information "for the four individuals who were most intimately involved in handling [Plaintiffs'] claim" (ECF No. 85 at 10), but Plaintiffs seek that information relative to six additional individuals whose names were mentioned in the claim and special investigation unit ("SIU") files that Defendant produced (ECF No. 73 at 13–14; ECF No. 92 at 7). Defendant argues that those six individuals did not "play[] a significant role in the investigation or adjustment of the claim" and that "the nature and extent of their involvement . . . is clear from [the] document production." (ECF No. 85 at 10.) Plaintiffs contend that the six individuals "were identified by [the principal claims investigator who handled Plaintiffs' claim] as people above him in the company who were involved in setting of the reserves and getting authority to make offers." (ECF No. 92 at 7.)

As an initial matter, if Plaintiffs know who these individuals are and how they contributed to handling Plaintiffs' claim, it is unclear why Plaintiffs feel that it is necessary for this Court to order Defendant to provide that information. Nonetheless, Plaintiffs' requests are broad: Interrogatory No. 2 seeks information about anyone "who performed any work or was in any manner involved in the adjustment, supervision, investigation or handling of [Plaintiffs'] claim[]." (ECF No. 73 at 13.) Notably, it is not limited only to those who were "most intimately involved." (ECF No. 85 at 10.) Plaintiffs are entitled to discovery related to the individuals who participated, however minimally, in Defendant's treatment of their claim.

Interrogatory No. 4, by contrast, is not as broad as Interrogatory No. 2: it requests information about "the training of *all claims personnel* involved in the handling of [Plaintiffs' claim]." (ECF No. 73 at 13 (emphasis supplied).) To the extent any of the six individuals Plaintiffs have identified are not "claims personnel," Interrogatory No. 4 does not purport to apply to those individuals, and their information is therefore not responsive to Interrogatory No. 4, even if it is responsive to Interrogatory No. 2.

In sum, Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED** as to Interrogatories Nos. 2–4. Defendant is **ORDERED** to respond to Interrogatories Nos. 2–4 as set forth herein within fourteen (14) days from the date of this Order.

*B. Interrogatory No. 6*

This interrogatory requests that Defendant provide the name, address, and telephone number of every individual who has worked as a claims adjuster for Defendant on commercial fire loss claims in the past five years, even if he or she is no longer employed by Defendant. (ECF No. 73 at 14.) Defendant agreed to provide "the identit[ies] of [its employees] who were responsible for handing the Plaintiffs' claim," but Plaintiffs argue that "limiting this interrogatory to only individuals that were involved in the subject claim would severely prejudice [their] ability to litigate [their] bad faith claim." (*Id*. at 15.) Plaintiffs contend that the requested information will shed light on Defendant's "standards for investigating other fire loss claims." (*Id*.) Defendant, however, asserts that its "handling of Plaintiffs' claim is based on multiple unique variables," such that any information about other claims that Plaintiffs may glean from Defendant's current and former claims adjusters would not be helpful to Plaintiffs in this case. (ECF No. 85 at 11–13.)

3

Plaintiffs are entitled to information about Defendant's treatment of other, similar claims; indeed, such information is undoubtedly relevant to Plaintiffs' efforts to show that Defendant engaged in unfair settlement practices. *See* Syl. Pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996) (setting out showing necessary to establish "general business practice" under statute); *see also* W. Va. Code § 33-11-4(9). But there are other, more efficient, less intrusive ways for Plaintiffs to obtain that information without having to seek out nonparties who may no longer be employed by Defendant and were not in any manner associated with Defendant's handling of Plaintiffs' claim. *See Williams v. Am. Int'l Grp., Inc.*, No. 2:15-cv-554-JDW-GMB, 2016 WL 2759306, at *1 (M.D. Ala. May 12, 2016) (directing defendant insurance company "to provide phone numbers and last known addresses in their possession" for former employees who "took action on Plaintiff's claims from 2011 to 2013"). To the extent Defendant has not yet provided the requested information for the individuals who were responsible for handling Plaintiffs' claim, it is **ORDERED** to do so within fourteen (14) days from the date of this Order. Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED** as to Interrogatory No. 6 with regard to those individuals, but it is **DENIED** as to Interrogatory No. 6 in all other respects.

*C. Interrogatory No. 7*

This interrogatory requests that Defendant identify its corporate representative who plans to attend the trial in this case and provide that individual's contact information. (ECF No. 73 at 15.) Plaintiffs assert that they need the requested information prior to the close of discovery in order to "adequately prepare for this individual's deposition." (*Id.*) They anticipate "interrupt[ing] the trial to conduct discovery of [the]

4

representative" if he or she is not identified during the discovery period. (ECF No. 92 at 8.)

Defendant contends that at present, the trial is too distant in the future for it to have ascertained which of its employees may be available to appear on its behalf, and it points out that the individual may not have independent knowledge of the facts of this case. (ECF No. 85 at 13.) It further argues that it has already agreed to designate a Federal Rule of Civil Procedure 30(b)(6) designee, whose "testimony will be binding on [Defendant], regardless of who attends trial." (*Id.*)

Plaintiffs have not shown why it is necessary for Defendant to provide the requested information at this stage of the proceedings. Through the discovery that has been conducted to date, Plaintiffs have ascertained the identities of Defendant's employees who were most significantly involved in evaluating Plaintiffs' claim. Plaintiffs have had—and will continue to have—ample opportunity to obtain discovery about and from those individuals. As Defendant points out, Plaintiffs will also procure, if they have not already, Rule 30(b)(6) deposition testimony that constitutes Defendant's official position as to the facts of this case. In the event that Defendant's trial representative has not been previously identified to Plaintiffs as a result of this discovery, it is incredibly unlikely that the trial representative would have personal knowledge of the facts of the case. Further discovery from this individual would thus be unnecessary. Moreover, Federal Rule of Civil Procedure 26(a)(3)(A)(i) requires each party to disclose its trial witnesses' names and contact information at least thirty days before trial, leaving sufficient time for Plaintiffs to request discovery relating to any witnesses who had not hitherto been identified or to altogether object to their appearance as witnesses for

Defendant. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, Plaintiffs' supplemental motion to compel (ECF No. 73) is **DENIED** with respect to Interrogatory No. 7.

D. *Requests for Production Nos. 2 & 5–7*

These requests seek the production of the claim and SIU files relating to Plaintiffs' fire loss claim. (*See* ECF No. 73 at 16.) Defendant produced these files to Plaintiffs, but Plaintiffs contend that Defendant did not adequately respond to the requests for production because it redacted certain information from the files and withheld other documents in their entirety. (*Id.* at 12, 16.)

1. *Sufficiency of Privilege Logs*

Plaintiffs argue that Defendant's privilege logs for the claim and SIU files are "insufficient" because Defendant did not include entries for the redactions it made to those files. (*Id.* at 5.) Defendant responds that its privilege logs "identify the small subset of documents that have been withheld in their entirety," and the redactions to various pages of the claim and SIU files are clearly identified and explained. (ECF No. 85 at 2, 4–5.) But Plaintiffs contend that Defendant has not provided enough information for them to determine whether it properly redacted or withheld documents. (*See* ECF No. 92 at 6.)

"A privilege log must contain 'specific facts which, taken as true, establish the elements of the privilege for each document for which privilege is claimed.'" *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 246–47 (S.D.W. Va. 2014) (quoting *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 536 (D. Md. 2011)); *see* Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do

6

so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); *Lord & Taylor, LLC v. White Flint, L.P.*, No. RWT 13-cv-1912, 2015 WL 13309999, at *2 (D. Md. Mar. 23, 2015) ("The standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed." (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 406 (D. Md. 2005))). "A privilege log meets this standard, even if not detailed, if it identifie[s] the nature of each document, the date of its transmission or creation, the author and recipients, the subject and the privilege asserted." *Carpenter Reclamation*, 301 F.R.D. at 247 (quoting *Clark*, 799 F. Supp. 2d at 536). When documents have been redacted on the basis of privilege, the redactions need not be included in the privilege log when "the documents themselves provide . . . enough information to identify the nature of the documents and to assess [the] claim that the redacted portions are privileged." *CresCom Bank v. Terry*, No. 2:12-cv-00063-PMD, 2013 WL 3946222, at *2 (D.S.C. July 31, 2013).

The privilege logs Defendant has provided to Plaintiffs are sufficient. It is unnecessary for Defendant to revise its privilege logs to note redactions from the claim and SIU files. Defendant's redactions and the reasons for them are clearly identified on the pages where redacted material appears. (*See* ECF No. 73-1.) And for many of the redactions, Defendant has not obscured the date and time of the entry into the file or the identity of the individual who made the entry. (*See, e.g.*, *id.* at 14.)[2] As such, Plaintiffs

---

2 It appears that Defendant has redacted the date, timestamp, and identity of the individual who entered data for two entries on page HARCO0000421. Defendant is **ORDERED** to revise this page such that the date, timestamp, and identity of the individual who entered data are not redacted and provide it to Plaintiffs within fourteen (14) days from the date of this Order. Defendant may redact the substance of the two entries.

can ascertain from the face of the document all the information necessary, under the standard set out in *Carpenter Reclamation*, to determine whether Defendant has properly redacted privileged material. To require Defendant to set out that information in a privilege log is, quite simply, an inefficient use of time and resources. Plaintiffs' supplemental motion to compel (ECF No. 73) is **DENIED** in that respect.

    *2. Attorney–Client Privilege*

Plaintiffs next contend that Defendant improperly redacted or withheld certain documents on the basis of attorney–client privilege. (ECF No. 73 at 1; ECF No. 92 at 4–5.) Typically, under West Virginia law,[3] the insured, not the insurer, is the holder of the attorney–client privilege and has the authority to assert or waive it. *See State* ex rel. *Allstate Ins. Co. v. Madden*, 601 S.E.2d 25, 34 (W. Va. 2004). But "[w]here the interests of an insured and [its] insurance company are in conflict with regard to a claim . . . and the insurance company is represented by counsel, the bringing of a related first-party bad faith action by the insured does not automatically result in a waiver of the insurance company's attorney–client privilege concerning the . . . claim." *Id.* at Syl. Pt. 4 (quoting Syl. Pt. 7, *State* ex rel. *Brison v. Kaufman*, 584 S.E.2d 480 (W. Va. 2003)).

Rather, in that context, "the insurer may . . . rely upon the [attorney–client] privilege to shield evidence from disclosure if it can establish the satisfaction of the privilege's requisite elements." *Id.* at 34 (citing Syl. Pt. 7, *State* ex rel. *U.S. Fid. & Guar. Co. v. Canady*, 460 S.E.2d 677 (W. Va. 1995)). Those elements are as follows: "(1) both parties must contemplate that the attorney–client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor;

---

3 "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Plaintiffs' claims arise solely under West Virginia law. (ECF No. 1 at 6–16.)

(3) the communication between the attorney and client must be intended to be confidential." Syl. Pt. 1, *State* ex rel. *Montpelier Ins. Co. v. Bloom*, 757 S.E.2d 788 (W. Va. 2014) (quoting Syl. Pt. 2, *State v. Burton*, 254 S.E.2d 129 (W. Va. 1979)).

In the Order dated March 6, 2020, the undersigned directed Defendant to provide copies of the documents it redacted or withheld on the basis of attorney–client privilege to the undersigned for review. (ECF No. 102.) The undersigned has completed that review and concludes that Defendant properly redacted or withheld many of those documents.

Communications recorded in the claim and SIU files that reflect information Defendant's employees provided to its counsel as part of the representation are protected by the attorney–client privilege. The principal purpose of the privilege is to assure the client "that any information revealed to counsel will remain confidential." 1 Louis J. Palmer, Jr., Robin Jean Davis & Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 501.07 (6th ed. 2019). That is, the privilege relieves the client of any obligation to disclose what was said to the attorney. *Id*. Of course, the client "cannot conceal a fact merely by revealing it to his or her lawyer," but the privilege protects the client's statements to the lawyer about that fact. *Id*. For the same reasons, communications recorded in the claim and SIU files that reflect requests by Defendant's employees for its counsel to complete some task are protected by the attorney–client privilege. Thus, Defendant has properly redacted or withheld documents on these bases.

Communications recorded in the claim and SIU files that reflect legal advice Defendant received from its counsel are protected by the attorney–client privilege. In addition to protecting communications from the client to the lawyer, the privilege shields from disclosure communications from the lawyer to the client. *State* ex rel. *U.S. Fid. &*

9

*Guar. Co. v. Canady*, 460 S.E.2d 677, 687 (W. Va. 1995) ("Communications made in confidence either by an attorney or a client to one another are protected by the privilege."). More specifically, the privilege "covers confidential communications between [a company's] attorneys and its employees." *State* ex rel. *HCR Manorcare, LLC v. Stucky*, 776 S.E.2d 271, 282 n.14 (W. Va. 2015). Defendant has properly redacted or withheld documents on this basis.

Similarly, communications between Defendant's employees that relay legal advice Defendant received from its counsel are protected by the attorney–client privilege. Corporations and other similar entities "must act through agents, including [their] officers and employees." *Id.* Therefore, communications between employees that relay legal advice may be necessary for the entity to carry out its counsel's instructions. Defendant has properly redacted or withheld documents on this basis.

Communications between Defendant's employees and non-lawyer employees of the law firm Defendant retained to represent it in handling Plaintiffs' claim are privileged. The attorney–client privilege "extends to others who are advised of confidential information at the direction of the attorney." *State* ex rel. *Med. Assurance of W. Va., Inc. v. Recht*, 583 S.E.2d 80, 88 (W. Va. 2003) (quoting *State* ex rel. *Doe v. Troisi*, 459 S.E.2d 139, 147 (W. Va. 1995)). That includes "a clerk or secretary" employed by the attorney. Palmer, Jr., et al., *supra*. As such, Defendant has properly redacted or withheld documents reflecting communications between its employees and non-lawyer employees of its outside counsel made in furtherance of the representation.

However, communications between Defendant's employees that do not reflect the legal advice of counsel, even to the extent they relate to Defendant's procurement of counsel, are not protected by attorney–client privilege. When an attorney represents

multiple clients, the attorney–client privilege does not apply to communications between those clients, even if they share a "common interest," "when they are speaking together without the assistance of counsel." Palmer, Jr., et al., *supra*. That situation is analogous to the situation here, where the corporation is the client and its employees are speaking to each other "without the assistance of counsel." Defendant has improperly redacted or withheld these communications. The pages where such communications appear include HARCO0000448, HARCO0000464, HARCO0000729, HARCO0000748, and HARCO0010450.[4] Defendant is **ORDERED** to provide revised copies of those pages to Plaintiffs, with the communications between Defendant's employees not redacted, within fourteen (14) days from the date of this Order.

In addition, invoices reflecting the fees Defendant paid to its outside counsel for representation are not protected by the attorney–client privilege. *Mordesovitch v. Westfield Ins. Co.*, 244 F. Supp. 2d 636, 643 (S.D.W. Va. 2003) ("Generally, 'neither the identity of a client nor the fees that the client pays is within the attorney–client privilege.'"); *see* Palmer, Jr., et al., *supra* ("[T]he attorney–client privilege normally does not extend to the payment of attorney fees and expenses . . . ."). Accordingly, Defendant has improperly withheld invoices from its outside counsel for legal services rendered. The control numbers noted on Defendant's privilege log for these documents are 1036, 1254, 1255, 1257, 1258, 1260, and 1261. Defendant is **ORDERED** to provide these documents to Plaintiffs within fourteen (14) days from the date of this Order. The descriptions of the work completed may be redacted, as they reflect the mental impressions of Defendant's counsel about the case.

---

4 To be clear, the undersigned acknowledges that other information on some of these pages was properly redacted for reasons already described. Defendant may continue to redact that information.

Finally, the names of individuals who participated in conference calls with Defendant's counsel are not protected by attorney–client privilege. The names of individuals are not confidential communications. Defendant has redacted this information from pages HARCO0000454, HARCO0000458, and HARCO0010471. Defendant is **ORDERED** to provide revised copies of those pages to Plaintiffs, with the names of individuals who participated on conference calls not redacted, within fourteen (14) days from the date of this Order. Notes in the claim file about the substance of the conference calls are shielded by attorney–client privilege and were properly redacted.

Accordingly, Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED IN PART** and **DENIED IN PART** as to the documents redacted or withheld on the basis of attorney–client privilege.

*3. Reserves Calculations*

Plaintiffs argue that Defendant improperly redacted its reserves calculations and related information from the claim and SIU files. (ECF No. 73 at 6.) They contend that Defendant's "objective assessment of its liability . . . is relevant to the degree to which [it] failed to implement fair settlement practices." (ECF No. 92 at 3.) Defendant responds that reserves information is not relevant in a first-party bad-faith action. (ECF No. 85 at 5–6.)

Reserves calculations are essentially an insurance company's internal valuation of a claim and represent an amount the insurance company is comfortable spending to settle the claim. *See State* ex rel. *Erie Ins. Prop. & Cas. Co. v. Mazzone*, 625 S.E.2d 355, 358–59 (W. Va. 2005) ("[R]eserves are value approximations made by an insurance company regarding what will be sufficient to pay all obligations for which the insurer may be responsible under the policy with respect to a particular claim." (internal quotation marks

omitted)). Under West Virginia law, the relevance of reserves information depends on "the methods by which an insurance company sets a reserve in a particular claim." *Id.* at 359.[5] To that end, reserves information is appropriately disclosed when "the specific facts of the claim in the case before [the court] directly and primarily influenced the setting of the reserves in question." *Id.* at Syl. Pt. 5; *see Am. Auto. Ins. Co. v. Haw. Nut & Bolt, Inc.*, No. 15-cv-000245 ACK-KSC, 2017 WL 80248, at *4 (D. Haw. Jan. 9, 2017) ("If calculations rely on automatic factors rather than an analysis of the factual or legal merits of the insured's specific claim, the relevance diminishes significantly.").

The reserves calculations are relevant to Plaintiffs' unfair-settlement claims, although their utility to Plaintiffs is questionable at best. *See Flintkote Co. v. Gen. Accident Assurance Co. of Can.*, No. C 04-01827 MHP, 2009 WL 1457974, at *3 (N.D. Cal. May 26, 2009) ("Reserves are arguably an educated guess of what the insurer might be required to pay, may be incomplete and unreliable if set early in the claims process, and are adjusted frequently."). Deposition testimony in this case indicates that Defendant used the "worst-case scenario" method to calculate reserves for Plaintiffs' claim. (ECF No. 73-5 at 1.) The worst-case scenario method sets the reserves at "an amount of money that reflects a settlement or verdict value in the event all decisions fall against the insurer." *Mazzone*, 625 S.E.2d at 597 (internal quotation marks omitted). Deposition testimony suggests that Defendant's reserves calculations place a value on the claim based on the facts available to Defendant about the claim at any given point in time. (*See* ECF No. 73-5 at 1.) The reserves calculations in the claim and SIU files may therefore "show [Defendant's] state of mind in relation to its claim settlement practices"

---

5 Although Federal Rule of Evidence 401, rather than West Virginia law, governs the issue of relevance in this case filed in federal court, *First Am. Title Ins. Co. v. Bowles Rice, LLP*, No. 1:16-cv-219, 2017 WL 6329953, at *5 (N.D.W. Va. Dec. 11, 2017), the undersigned finds the guidance in *Mazzone* instructive in this action brought under West Virginia law.

with regard to Plaintiffs' claim. *Stone v. Allstate Ins. Co.*, No. 2:00-cv-00059, 2000 WL 35609369, at *4 (S.D.W. Va. July 24, 2000) (quoting *First Nat'l Bank of Louisville v. Lustig*, Nos. 87-cv-5488, 88-cv-1682, 1993 WL 411377, at *1 (E.D. La. Oct. 5, 1993)); *see Flintkote Co.*, 2009 WL 1457974, at *3 ("[R]eserves information is relevant and discoverable when it may shed light on what an insurer actually thought regarding [the] merits of an insured's claims where there is a 'self-conscious disconnect' between the insurer's payment of benefits and its evaluation of the scope of the loss."). Such evidence, were it to be gleaned from the reserves calculations in this case, certainly bears on whether Defendant engaged in unfair settlement practices in handling Plaintiffs' claim.

Accordingly, Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED** as to the reserves calculations. Defendant is **ORDERED** to provide the claim and SIU files to Plaintiffs without the redaction of reserves calculations and related information within fourteen (14) days from the date of this Order.

*4. Reinsurance Information*

Plaintiffs next assert that Defendant improperly redacted reinsurance information from the claim and SIU files. (ECF No. 73 at 9–10.) They argue that reinsurance information, like reserves information, is "highly relevant" to their claims that Defendant utilized unfair claims settlement practices. (*Id.* at 10.) Defendant responds that reinsurance information is not relevant to claims between the insurer and its policyholder or to bad-faith claims against the insurer. (ECF No. 85 at 6–7.) It further argues that reinsurance information has no bearing on the value of Plaintiffs' business losses. (*Id.* at 8.)

Like the reserves calculations and related information, reinsurance information is relevant in this case to the extent it sheds light on Defendant's "state of mind" throughout

14

its handling of Plaintiffs' claim. *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 623 (D.S.C. 2017) ("[C]ommunications with reinsurers are relevant to an insurer's good faith to the extent that the insurer explained its reasons for granting or denying portions of plaintiffs' claims or otherwise described or explained its handling of plaintiffs' claims." (alterations and internal quotation marks omitted)). Deposition testimony in this case indicates that the claims investigator assigned to Plaintiffs' claim periodically prepared "reinsurance reports" that summarized "the status of the claim and the status of the investigation" for the benefit of Defendant's reinsurers. (ECF No. 73-5 at 6–7.) The reinsurance reports, which reflect Defendant's assessment of its handling of Plaintiffs' claim, bear on whether Defendant acted unreasonably. As such, Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED** as to the reinsurance reports and any related notations in the claim or SIU files. Defendant is **ORDERED** to provide that information to Plaintiffs within fourteen (14) days from the date of this Order.

  *5. Irrelevant Information*

  Plaintiffs also contend that Defendant improperly redacted from the claim and SIU files information it considered to be irrelevant. (ECF No. 73 at 11.) Defendant responds that it has not redacted information solely on that basis, with the exception of a section of the claim file that relates to the claim of another insured and was inadvertently included in the claim file for Plaintiffs' fire loss claim. (ECF No. 85 at 9.)

  To the extent Defendant redacted irrelevant information from the claim and SIU files, redaction of documents produced in discovery to exclude non-responsive or otherwise irrelevant information is generally disfavored. *See, e.g.*, *Wellin v. Wellin*, Nos. 2:13-cv-1831-DCN, 2:13-cv-3595-DCN, 2:13-cv-4067-DCN, 2015 WL 5781383, at *5 (D.S.C. Sept. 30, 2015) (collecting cases); *David v. Alphin*, No. 3:07-cv-11, 2010 WL

1404722, at *7–*8 (W.D.N.C. Mar. 30, 2010) (compelling disclosure of unredacted documents). As is evident in this case, one-sided redaction of information, even if the information is irrelevant, "breed[s] suspicions[] and . . . may deprive the reader of context." *Wellin*, 2015 WL 5781383, at *5 (quoting In re *State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, Nos. 08 md 1945(RJH)(DFE), 08 Civ. 0333(RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009)). Unless the redaction is authorized by Federal Rule of Civil Procedure 5.2(a) or Local Rule of Civil Procedure 5.2.1, or is a similarly minor redaction to protect an individual's privacy, documents should not be redacted to omit non-responsive information. *David*, 2010 WL 1404722, at *7 (quoting *Evon v. Law Offices of Sidney Mickell*, No. S-09-0760 JAM GGH, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010)).

That said, Defendant appropriately redacted from the claim file information related to the claim of another insured. This information, which would not have been included in the claim file for Plaintiffs' fire loss claim but for human error, has no bearing on Plaintiffs' claims in this action. There is simply no indication that the claim of the other insured is at all like Plaintiffs' fire loss claim, and Plaintiffs have not asserted otherwise. (*See* ECF No. 73 at 11.) As such, the privacy interests of the other, nonparty insured whose information was inadvertently included in the claim file for Plaintiffs' fire loss claim prevail. *See Collins v. JC Penney Life Ins. Co.*, No. 02-cv-0674-L(LAB), 2003 WL 25945842, at *7 (C.D. Cal. May 6, 2003) (recognizing "consent and privacy interests of potentially affected third party insureds"); *see also Smith v. Life Investors Co. of Am.*, No. 2:07-cv-681, 2009 WL 3364933, at *2 (W.D. Pa. Oct. 16, 2009) (declining to order insurance company to provide names and contact information of other insureds who did not submit similar claims as plaintiff).

Accordingly, Plaintiffs' supplemental motion to compel (ECF No. 73) is **DENIED** as to the information of Defendant's other insured that was inadvertently included in the claim file for Plaintiffs' fire loss claim, but **GRANTED** as to any other information Defendant may have redacted from the claim and SIU files solely on the basis of irrelevance. Defendant is **ORDERED** to provide this information, to the extent it exists, to Plaintiffs within fourteen (14) days from the date of this Order.

*6. Subrogation Information*

Lastly, Plaintiffs argue that Defendant improperly redacted subrogation information from the claim and SIU files. (ECF No. 73 at 11–12.) Defendant has agreed to provide this information and remove the redactions "in otherwise non-privileged documents." (ECF No. 85 at 9.) To the extent Defendant has not already done so, it is **ORDERED** to do so within fourteen (14) days from the date of this Order. Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED** in that respect.

E. *Request for Production No. 8*

This request asks Defendant to provide the job descriptions and certain information from the personnel files of each individual identified in response to Interrogatory No. 2. (ECF No. 73 at 16.) Plaintiffs clarify that they "seek[] documents reflecting job performance evaluations of claims representatives who were substantively involved in handling [their] claim," and they argue that employee performance evaluations are relevant to show "how [Defendant] assesses the performance of its employees and, thus, enforces its standard of claims investigations." (*Id*. at 16–17.)

Defendant has agreed to produce "performance evaluations for the [four] individuals who were most intimately involved in the handling and adjustment of Plaintiffs' claim, but only to the extent such evaluations refer to or discuss the specific

17

insurance claim at issue in this case." (ECF No. 85 at 14.) It argues that anything beyond that scope is irrelevant and risks exposing information about the claims of "other policyholders [that] are not parties to this lawsuit and have not consented to the disclosure of information pertaining to their claims." (*Id*. at 15.) But Plaintiffs contend that the "arrangement" Defendant has proposed "gives [Defendant] too much discretion to withhold relevant information." (ECF No. 73 at 17.)

Defendant's assessment of its employees' performance relative to their treatment of Plaintiffs' claim and other similar claims bears on Defendant's implementation of reasonable standards for the investigation of claims. However, Plaintiffs' request is exceptionally broad. It is appropriately limited only to the four employees with significant involvement in the handling of Plaintiffs' claim because these individuals engaged in routine decision-making about the investigation of the claim. Plaintiffs seek the requested information for eight other individuals, some of whom appear to have been part of the chain of command in order for the claims investigator to seek approval to raise the reserves over a certain amount or were listed in the claim file as having been present on a conference call. (*See* ECF No. 73-1 at 25; ECF No. 73-5 at 3–5.) Their minimal involvement in the investigation of Plaintiffs' claim does little to aid Plaintiffs in demonstrating that Defendant acted unreasonably with regard to that investigation and the investigations of other similar claims. Plaintiffs are not entitled to the requested information as to those eight individuals.

As to the four individuals who were significantly involved in handling Plaintiffs' claim, Plaintiffs are entitled to any routine performance reviews, regardless of whether those reviews deal with a specific type of claim, created on or after June 9, 2015. Specific performance commendations, discipline, or other types of performance evaluations

beyond routine reviews should be produced only to the extent they deal with fire loss claims made under a Commercial – Special Form policy for losses that occurred in West Virginia on or after June 9, 2015. Defendant may redact from the documents produced pursuant to this request any information permitted to be redacted according to Federal Rule of Civil Procedure 5.2 or this District's Local Rule of Civil Procedure 5.2.1, as well as any information that identifies a policyholder other than Plaintiffs. Defendant is **ORDERED** to provide this information to Plaintiffs within fourteen (14) days from the date of this Order.

Accordingly, Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED IN PART** and **DENIED IN PART** with respect to Request for Production No. 8.

*F. Conclusion*

In conclusion, for the foregoing reasons, Plaintiffs' supplemental motion to compel (ECF No. 73) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. The fourteen (14)-day response deadline may be extended upon mutual agreement of the parties.

**IT IS SO ORDERED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 25, 2020

Dwane L. Tinsley
United States Magistrate Judge